## Case No. 14,774.

UNITED STATES v. CHAFFEE et al.

[17 Pittsb. Leg. J. 116; 11 Int. Rev. Rec. 110.]

Circuit Court, S. D. Ohio. 1870.[1]

EVIDENCE—PRESUMPTIONS—INTERNAL REVENUE—ACTION FOR PENALTY.

1. Evidence which is in itself inconclusive derives a conclusive quality from mere defect of proof on the part of the adversary, or of the accused. Thus, where the government prosecutes for the penalty for the nonpayment of a tax on a quantity of whisky manufactured, and the testimony of the government did not amount to an absolutely conclusive character; was such, in fact, that the defence, if made in good faith, would have been assisted by the production of the books of the concern, and they were not produced, the law presumes against such party, and the jury is authorized to resolve all doubts adversely to his defence.

[Cited in Curran v. Munger, Case No. 3,487.]

2. The same rule is applicable where a party once had proof in his power which has been voluntarily destroyed, or placed beyond his reach.

3. When testimony of a damaging nature is given and defendant is by and makes no denial, all doubts are resolved against him.

The defendants were distillers at Tippecanoe, Miami county, Ohio, and the firm was composed of H. D. Chaffee, since deceased, Rue P. Hutchins, and Sidney L. Chaffee. This suit was an action in debt, brought by the United States, to recover of the defendants the sum of one million of dollars penalty, under the 48th section of the act of June 30, 1864, and acts amendatory thereof, for having in their possession, and unlawfully selling, large quantities of distilled spirits, with intent to evade the payment of the duties imposed by law thereon. The declaration contained three counts, two of which were abandoned by the plaintiffs upon the trial, and the third count was the only one upon which the counsel for the government relied for a verdict.

[At the former trial of this case the jury rendered a verdict in favor of the United States for the sum of $253,200. (Case unreported.) Upon motion the court set aside this verdict, and granted a new trial. Case No. 14,773.]

Henry Hooper, Asst. U. S. Atty., and Judge Headington, for the United States.

Follet & Wright, for defendants.

EMMONS, Circuit Judge (charging jury). I have no doubt that it will cause common congratulation that this very long and tedious trial is drawing so near its close. We have detained you only some eleven and a half working days, enabling the court and the jury in the intervals, I trust, to be re-

---

lieved, not only from the irksomeness of the trial, but the disadvantages of continuous absence from other duties. High praise is due to counsel for this. Much has been gained in time by concessions which we had no right in law to call upon them to make, and it is gratifying to the court, in looking over the trial, to feel entire confidence that no one fact has been omitted which more time would have developed. We know just as much about the case as if we had, as on the former trial, consumed five weeks in its investigation. Certainly, the zeal and the untiring industry of the defendants' counsel exclude every complaint on the part of their clients; and I need not say that I think the government has nothing to complain of, in view of what its learned counsel has done.

The issues before you are very much simplified by the mutual admission that the time within which this wrong has been committed was between October, 1865, and September, 1866, a period of about ten months. It is also conceded that the amount of whisky on hand in October shall be credited to the defendants. That is, the government must show not only that they have sold more during the ten months than they paid tax on, but also than this amount when added to that which they had on hand. It is not quite so simple as this, because you will take into consideration whether, at the expiration of this period, they still had on hand some portion of that which they possessed in October, 1865. In round numbers, I think, the proof clearly shows, and perhaps it may be stated as a concession, that the tax has been paid on about 6,000 barrels. The government claims to show a sale of about 9,000, showing a surplus of some 3,000 barrels, or, in round numbers, some 188,000 gallons, on which the claim of the government for tax and penalty is about $750,000. That is the government's claim. The defendants reply that it is admitted they have paid taxes on some 6,000; that they proved they had on hand some 2,000 or 2,500 barrels; and although this would leave a balance of illicit whisky to be accounted for, still they insist the government has failed to show the manufacture of the whole amount of 9,000 barrels, and that, after a fair balancing of testimony, the jury ought to find that the defendants sold no whisky whatever in violation of law.

In a general way the government have shown by the consignees' testimony some 6,000 barrels, and by the way-bills and canal books some 3,000, making up the 9,000. They claim to show by the mash book the capacity of the distillery to be somewhere in the vicinity of double that necessary to produce the quantity which they actually paid a tax on. By consultation of this book it seems the average run of the distillery during the ten months, as reported, was about four hundred bushels; and turning to the earlier stages of its operations we find many months when it was seven and eight hundred, and

more, bushels. It is for you to say, from the testimony, whether the capacity of the distillery was or was not what the government claims it to be. If you so find it, you will then come to the conclusion that there was power on the part of the defendants to commit the offence with which they are charged. It is claimed that the evidence of these consignees, and especially the testimony of the way-bills, is very delusive; that it tends to duplication, and that you will be very likely to charge these defendants twice over with the same amount. So far as the nature of this testimony is concerned, there has been, in modern times, a very great change of opinion, and I do not know that if I should search all the books I ever read, or call to mind all my experience at the bar, I could select a more fitting instance to illustrate my own opinion of the respective values of these two classes of testimony than the contrast between the persuasive effect of memoranda, made in the ordinary course of business, by those who have no motive to falsify, whose duty it was to record them at the time the transactions took place, on the one hand; and, on the other, the grossly conflicting verbal testimony given in this case as to the amount of whisky on hand in October, 1865. Compare the two, and see upon which, in its own nature, as men of common sense, you can repose your credence with most confidence. The one is plain, simple and direct, without a motive of falsification. The other presents a spectacle like this: a phalanx of twenty men swearing on their oaths to some two thousand barrels of whisky at a given time in a given place; and two-thirds as many, equally intelligent and equally respectable, with equal opportunities of knowledge, swearing there are not fifty barrels there. It is a hopeless conflict, leaving the mind in uncertainty, with nothing whatever to rest upon.

It is, however, before you, and you will look carefully over its details, give due weight to the ingenious and able criticisms which have been made by the distinguished counsel for the defendants, give the same consideration to that which has been given by the learned counsel for the government, and resting there, stopping with the proof put in on the part of the government, say whether, if the defendants had given no proof whatever, you believe a plausible, reasonably proved case was made out. Would you have felt at liberty, on your oaths, to have acquitted the defendants if they had given no proof whatever? If you will pursue this order of investigation it will enable you, I think, more easily to follow that course which, in my estimation, is demanded by well settled principles in the law of evidence. The first question which arises is, do you believe the consignees? They are wholly unimpeached. We have no suggestions made by the defendants, either by argument or by evidence, that they swore untruly. The only liability to error is the danger of duplication.

The way-bills, the railroad shipments, the canal books, are attacked, not so much on account of what they say as the danger that they may speak twice upon the same subject. But it would seem to me that such a mistake is wholly unnecessary. The date, the quantities shipped, the shipments themselves, the consignees' names, all unite in preventing confusion. After much reflection, I am unable to call to mind any direction whatever which it is my duty to give you in estimating this testimony. I am asked for none whatever on the part of the defendants. It seems plain and direct. The utmost which counsel have said of it is, that it lacks that demonstrative certainty, that it is not that full proof which the law demands in an action so highly penal as this. Gentlemen, this may be most fully conceded, and still the government be entitled to your verdict. The proof in the outset may be defective; it may not be sufficient to enable you, without any doubt or hesitation, to find against the defendants, and still it may be your duty, nevertheless, so to find. For, although I instruct you fully, that the case must be made out beyond all reasonable doubt in this, as well as in criminal cases, yet the course of the defendants may have supplied, in the presumptions of law, all which this stringent rule demands. In determining, therefore, in the outset, whether a case is established by the government, you will dismiss from your minds the perplexing question whether it is so made out beyond all doubt. It need not, in the exigencies of this case, be so proved in order to throw the burden of explanation upon the defendants if, from the facts, you believe he has within his reach that power. In the end, all reasonable doubt must be removed, but here, at this stage, you need say only, is the case so far established as to call for explanation? Then the defendants assume the burden of proof. If, then, you conclude that, unexplained and uncontroverted by any testimony, the opening proof would enable you to find against the defendants for the claim of the government, or any material part of it, you will then take up their testimony in view of the principle which has been so much discussed, and which the court announced at an earlier part of the trial. Although the counsel for the defence, when this principle was announced, with spirit and energy sufficient, certainly, to demonstrate his sincerity, begged leave to differ with the court, in reference to the effect of not producing the books and not swearing the defendants, still the presumption of law is, that client and counsel have deliberately, and with full knowledge of the law and all its presumptions, elected to withhold this proof, and you will not, in the smallest degree, abate the full application of the principle on any notion that it may have been misapprehended. The rule is one which I am confident will commend itself to your common reason. It is this: Without exception, where a party has proof in his power, which, if produced, would render certain material facts, the law presumes against a party who omits it, and authorizes a jury to resolve all doubts adversely to his defence. The same rule is applicable in a case where a party once had proof in his power which has been voluntarily destroyed, or placed beyond his reach.

This brief announcement of a rule is all which is usual from the bench to a jury, the law assuming that it will be received with unquestioning confidence. But I have a motive, which it is unnecessary to explain, for reading it as described and applied by a few authors and judges. They have been selected with reference to their applicability to this cause. Not that you, gentlemen, are concerned with them, but for the convenience of counsel only, I will announce the books and pages from which I read. Starkie, Ev. 819: "In all criminal cases the guilt must be most fully proved. No weight of preponderance is sufficient unless it generate full belief of the fact beyond all reasonable doubt." This strong rule, gentlemen, is applicable in the case before you. But the author adds, on the following page, 820: "In criminal cases, the proof should be of a conclusive character. But here it is to be observed that it frequently happens in criminal, as in civil proceedings, that evidence which is in itself inconclusive derives a conclusive quality from mere defect of proof on the part of the adversary, or of the accused." And in the next paragraph he says: "A party being apprised of evidence and having the means of explanation in his power, and who does not make it, the strongest presumption arises that the charge or claim is well founded. It would be contrary to all experience of human nature and conduct to come to any other conclusion." In Clifton v. U. S., 4 How. [45 U. S.] 242, in a revenue case, and in reference to circumstances much like these this jury has to consider, it is said: "Under these circumstances the claimant was called upon by the strongest considerations, personal and legal argument, to bring to his defense the best evidence under his control." They add (page 248): "Practical illustrations of this rule are witnessed daily in criminal cases, and are too familiar to require more particular reference."

In a recent case in the Southern district of New York (Quantity of Distilled Spirits [Case No. 11,494]), when, in a similar case, the defendant had refused his books and neglected to testify, Judge Blatchford said to the jury: "If a party has the power of clearing up a doubtful point and does not do it, but instead resorts to all sorts of evidence except the direct evidence he himself could give, any doubt must be resolved most strongly against him." He then proceeds to apply the rule to the refusal of defendants to testify in reference to imputed conversations, because, he says, they could testify in their own case. Illustrations from criminal trials were given of how proofs creating only strong suspicion of guilt deserved that degree of conclusive-

ness demanded by the law for conviction if a prisoner failed to make explanation when such explanation was in his power.

His honor then proceeded as follows:

As Judge Blatchford applies this principle to a defendant who, in a case strikingly like this one, refused to contradict, under oath, a witness who swore to his confessions, I will, in connection with what he says, although somewhat out of the order I am following, ask your attention to what one of the government witnesses testified in reference to the defendant's admissions. He said the defendant told him, at the distillery, that he had little or no whisky there, some time in 1865. He testifies that in open court. The defendant sat by and heard it, but made no denial. It is not a matter for the jury to say that they will indulge in vague surmises in reference to the possibility of the witness being mistaken. The law, acting upon well settled principles of common reason, says that when such testimony is given, and the defendant is by and makes no denial, all doubts are resolved against him.

Mr. Follett—I would wish to state to your honor right there that this testimony was given in rebuttal, if your honor will recollect.

COURT—That makes no difference whatever. That testimony could not have been put in in chief, because it was not then applicable to the exigencies of the case. It was put in in rebuttal, as the learned counsel well suggests, and to rebut what? They had introduced some twenty-three witnesses who testified vaguely and loosely to estimates of whisky on hand, referring to anterior periods, endeavoring to recollect the observations which they then made; and to rebut that, the government called a witness, who said, "I conversed with the defendant at the distillery, and he told me he had little or no whisky there." Whether it is put in in rebuttal or in chief, has no significancy whatever in reference to the application of this principle of presumption.

It is for you to say whether the defendant did, or did not, keep books of account. The testimony, however, upon this point, seems to be uncontradicted, and that they consisted of day books, journals and ledgers. You will act upon your own business knowledge of what in all probability those books contained. The presumption of law, I charge you, is that the defendant did keep the accounts usual and necessary for the correct understanding of so large a business, and the accurate accounting, from time to time, between the several partners interested in it. I say to you that the books of the firm of which H. D. Chaffee was a member, he being dead, belonged of right to, and are assumed to be in the possession of, the surviving partners. The law presumes, also, the books to be in existence and accessible to the defendant, S. L. Chaffee, and his co-defendants, unless the contrary is shown by the evidence. The declaration of counsel that

they are in Buffalo is not evidence of that fact, and, if it were, would in law constitute no excuse for their non-production, without further proof that, upon diligent inquiry and effort, they could not be produced. If you believe the books were kept which contained the facts necessary to show the real amount of whisky in the hands of the defendants in October 1865, and the amount which they had sold during the next ten months; or that the defendants, or that either of them could, by their own oath, resolve all doubts on this point—if you believe this, then the circumstances of this case seem to come fully within this most necessary and beneficent rule.

And now, in the light of this rule, let us proceed briefly to consider the defendants' case. And first, I repeat, for the purpose of explanation only, that it is claimed, on the part of the defendants, the evidence of the government is uncertain, and may lead to duplication. Although you are to resolve all doubts against the defendants, this does not mean that because the plaintiff makes a prima facie case for $750,000, you are to write that down inexorably, and stop there. It means only that, if you believe such case is made, you are to start with that, and then carefully consider all the testimony; and, so far as you can, from any source, without any doubt or hesitation, mark out any, or all of it, that you will so do. Where there is certainty, this rule has no application. It is only where it is vague and doubtful that it comes in to relieve you from the doubt and perplexity which the silence of the defendants occasions. I have recurred to this again solely for the purpose of making this explanation.

Let us proceed, then, with the defendants' case. They say, grant what the government asserts, that we sold eight or nine thousand barrels of whisky during this time, we show you that we paid tax on six thousand barrels, and that we had two thousand or three thousand on hand. How is this proved? Two intelligent parties, whom you are warranted in presuming must know with certainty this great leading fact, refuse to testify. The law accords to them liberty to speak, and yet they remain silent. The books are also withheld. As a substitute for these sources of certainty there are produced as witnesses some neighbors of the defendants, grocers, physicians, day laborers, and farmers, who visited this distillery socially. or on business. All these witnesses speak, and to this I ask your particular attention, of subsequent estimates made from recollection, by endeavoring to call to mind quantities which they saw at past periods. They differed greatly in their general aggregate, and still more so in the amounts which they testified to as being at different places on the premises. Had these twenty-three men professed to have visited this distillery for the purpose of making an examination, and while there, with the property before them,

counted the tiers of barrels. and then and there estimated the quantity on the premises at two thousand five hundred barrels; and twelve others, equally intelligent and capable of observation, had sworn that they. too, went there for a like purpose; and, after diligent search, could find only some twenty-five in all, some of them working in the rooms, others storing property in them, and still others removing floors from the very apartments where these conflicting oaths located the greatest amounts of whisky, then there would be no room for reconciliation, or charity. The conflict would be too gross to call it misapprehension. Perjury beyond all doubt would have been committed. But you have no such case before you. Neither party professes to have made an estimate then and there, with the property before them, but each witness relies upon recalling what he had neither duty nor interest to observe at the time, and make measurements, and form opinions as to the quantities, only from what he remembers of the past. There is much liability for mistake on both sides in all such instances. Had this case been less important, and the expense and trouble of its retrial less, I am not at all certain but that I should have excluded this testimony altogether, trusting that a higher court would have upheld my decision in reference to what I concede would be a new step in practice. And now, gentlemen. in view of this state of facts, what should be your application of the rule of law that doubts should be resolved against the defendants? You certainly, it would seem to me, will be unable to fix, with entire confidence, upon any specific amount of whisky on hand in October, 1865. It certainly presents a case where you cannot say but there is doubt. It is a doubt in the power of the defendant to remove. If he does not do so, the law pronounces what your duty is. (Here the court called for the mash-book kept by the defendants.) There is a matter, which at one time I had though I was at liberty to omit, but subsequent reflection has convinced me that it is my duty to call your attention to it. If you believe that there have been any additions made, by or with the concurrence of the defendants, to this book, for the purpose of creating proof contrary to the truth, it also, perhaps, in an equal degree with any other facts in the case, raises a strong presumption against them. Here is an entry at the foot of the page: "Stopped this day; 2,056 barrels on hand in cribs and building." That is wholly exceptional. There is no other entry in the book like it. Its whole theory seems to be at war with the entry. You will observe the first one, which says 227 barrels on hand. is but a few months before, in December, 1863. Why "in cellar" should be added to several of these entries, when at this very period it is claimed there were several thousand barrels in the other departments, is not shown. By looking back in the book you will find blanks left all the way through, where these entries in red ink might have been made for any distance back. It is just in this period that the exceptional entry is made, and nowhere else: and to that I deem it my duty particularly to call your attention.

Gentlemen, a long experience of thirty odd years at the bar, in the contests of which I have always entered with very considerable zeal, must necessarily have fixed upon me the habit of earnestness, and, in some degree. unfitted me for concealing those proclivities which it is impossible for any intelligent judge not to have when he tries a case. In going over the facts in this compendious way, simply for the purpose of applying the abstract principles of law, which it is my sworn duty to state to you, I may, unconsciously, and I doubt not I have, more or less, indicated which way, were I a juror, I would find. But that is your province. If, in my zeal. I have, unconsciously, bowed a little too far over the fence which separates the field of your labors from mine, it is no disrespect for you to bow back again in the full consciousness that its cultivation is alone for you. That it is so I concede most fully. and do not ask the slightest consideration on your part for anything I may have said, which intimates what your duty in that regard should be. But as to the principles of law, and the presumptions which it makes from ascertained facts and conceded conditions, these you will take from the court. and inexorably apply, as they have been given you in charge.

The jury rendered a verdict for the government, and assessed the damages at $235,-680.

[NOTE. From the judgment entered in this case a writ of error was sued out in the supreme court. Mr. Justice Field, in delivering the opinion of the court, said: "The instruction sets at naught established principles. and justifies the criticism of counsel that it substantially withdrew from the defendants their constitutional right of trial by jury. and converted what at law was intended for their protection—the right to refuse to testify—into the machinery for their sure destruction." The judgment was reversed. and the case remanded. 18 Wall (85 U. S.) 516.]